

**FILED**
10/12/2022
JB  **22CR208**

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 22 CR 208   JUDGE KENNELLY |
|  | ) | MAGISTRATE JUDGE MCSHAIN |
|  | ) |  |
| v. | ) | Violations: Title 26, United States |
|  | ) | Code, Sections 7201 and 7203; |
|  | ) | Title 18, United States Code, Sections |
| JOSEPH J. CIPOLLA, JR. | ) | 1341, 1343 and 1344; Title 49, United |
|  | ) | States Code, Sections 32703(2) and |
|  | ) | 32709(b) |
|  | ) |  |
|  | ) | **SUPERSEDING INDICTMENT** |

## COUNT ONE

The SPECIAL APRIL 2021 GRAND JURY charges:

1.    At times material to this Superseding Indictment:

a.    The Internal Revenue Service was an agency of the United States Department of Treasury, responsible for administering and enforcing the tax laws of the United States. Under these laws, individuals were required to accurately report income to the Internal Revenue Service on individual income tax return forms (Form 1040 with schedules and attachments) and pay all income tax and tax penalties due and owing. If a taxpayer failed accurately to report or pay his or her tax liability, the Internal Revenue Service could calculate, assess, and attempt to collect the correct tax liability.

b.    Defendant JOSEPH J. CIPOLLA, JR. ("CIPOLLA") was a resident of the Northern District of Illinois.

c.     CIPOLLA and Individual AA were partners in the operation of Company A, a business which sold vehicles and performed automobile repair services in the Northern District of Illinois.

d.     In addition to his business involvement with Company A, CIPOLLA brokered the purchase and resale of vehicles by Company B. In particular, CIPOLLA located so-called "classic cars" for Company B to purchase for the purpose of resale at a profit following repair and restoration of the vehicles. Company B paid commissions to CIPOLLA that consisted of 50% of the net profit from the resale of vehicles that CIPOLLA located for purchase and resale by Company B.

e.     Casino A was a casino gaming business located in the Northern District of Illinois. Casino A reported to the Internal Revenue Service on Form W-2G gambling winnings above a certain threshold. Casino A included the social security number of the individual whose winnings were reported on Form W-2G.

f.     Prior to 2015, CIPOLLA established a rewards account with Casino A that allowed CIPOLLA to earn certain benefits or rewards at Casino A based on the volume of CIPOLLA's gaming activity at Casino A. No later than in or about mid-January 2015, CIPOLLA provided a false social security number to Casino A; in particular, CIPOLLA falsely represented to Casino A that the social security number of one of CIPOLLA's relatives was his own. By supplying a false social security number to Casino A, CIPOLLA induced Casino A to transmit to the

2

Internal Revenue Service Forms W-2G for CIPOLLA's gambling winnings that were associated with CIPOLLA's relative rather than CIPOLLA.

2.    During calendar year 2015, CIPOLLA received gross income of approximately $127,253 from Company B as commissions paid to CIPOLLA by Company B for locating vehicles that were purchased and resold at a profit by Company B. CIPOLLA was required by law, following the close of calendar year 2015, and on or before April 18, 2016, to file a Form 1040 individual income tax return with the Internal Revenue Service and to pay any such income tax that was due and owing.

3.    After consideration of other business and income-generating activity that CIPOLLA engaged in during 2015, including activity associated with Company A, CIPOLLA had an income tax due and owing to the Internal Revenue Service.

4.    CIPOLLA failed to file a Form 1040 individual income tax return for calendar year 2015 on or before April 18, 2016.

5.    During calendar year 2015, and continuing thereafter until the date of this Superseding Indictment, in the Northern District of Illinois, Eastern Division,

JOSEPH J. CIPOLLA, JR.,

defendant herein, did willfully attempt to evade and defeat the federal income tax due and owing by him to the United States for the calendar year 2015 by committing the following affirmative acts, among others:

a.    maintaining a false social security number at Casino A; and

3

b.     handling his affairs in a manner so as to avoid the creation and maintenance of customary business and accounting records concerning actual revenues received and expenses incurred;

In violation of Title 26, United States Code, Section 7201.

4

## COUNT TWO

The SPECIAL APRIL 2021 GRAND JURY further charges:

On or about April 18, 2016, in the Northern District of Illinois,

### JOSEPH J. CIPOLLA, JR.,

defendant herein, a resident of the Northern District of Illinois, having received gross income in excess of the amount required to file an income tax return, and thereby being required by law to file an income tax return (Form 1040 with schedules and attachments) following the close of calendar year 2015 and on or before April 18, 2016, willfully failed to make and file such return at the time required by law;

In violation of Title 26, United States Code, Section 7203.

5

## COUNT THREE

The SPECIAL APRIL 2021 GRAND JURY further charges:

1.     The allegations in sub-paragraphs 1(a), 1(b), 1(c), 1(e), and 1(f) of Count One of this Superseding Indictment are re-alleged and incorporated herein.

2.     In addition to his business involvement with Company A, CIPOLLA owned, operated and controlled a for-profit Illinois limited liability company called Chicago Muscle Cars LLC ("Chicago Muscle Cars"). Through Chicago Muscle Cars, CIPOLLA purchased and resold motor vehicles for a profit and earned substantial income in the process.

3.     One of the vehicles that CIPOLLA sold during 2016 was a 1963 Chevrolet Corvette (Vehicle Identification Number ("VIN") ending 3002). CIPOLLA purchased the vehicle in 2015 and, in order to conceal his ownership of it, caused vehicle to be titled in Illinois in the names of two of his relatives. CIPOLLA kept the vehicle titled in the names of his relatives through the time in 2016 that he sold it to Individual DW for approximately $85,0000. CIPOLLA received a substantial profit as a result of his sale of the 1963 Chevrolet Corvette (VIN ending 3002) to Individual DW.

4.     In addition to his business involvement with Company A and Chicago Muscle Cars, CIPOLLA brokered the sale of an airplane from Company C to a third-party. Company C paid approximately $20,000 to CIPOLLA for his role in brokering the sale of the airplane.

5.    During 2016, CIPOLLA used the personal identifying information of a relative to rent an apartment unit in the Aqua Building in downtown Chicago. In particular, CIPOLLA used a relative's date of birth, social security number and driver's license to rent the apartment unit. Thereafter, CIPOLLA used the Airbnb website to rent the apartment unit on approximately 43 separate occasions during 2016 in exchange for individuals to rent the unit on a short-term basis.

6.    After consideration of the business and income-generating activity that CIPOLLA engaged in during 2016, including activity associated with Company A, CIPOLLA had an income tax due and owing to the Internal Revenue Service.

7.    CIPOLLA failed to file a Form 1040 individual income tax return for calendar year 2016 on or before April 18, 2017.

8.    During calendar year 2016, and continuing thereafter until the date of this Superseding Indictment, in the Northern District of Illinois, Eastern Division,

JOSEPH J. CIPOLLA, JR.,

defendant herein, did willfully attempt to evade and defeat the federal income tax due and owing by him to the United States for the calendar year 2016 by committing the following affirmative acts, among others:

a.    maintaining a false social security number at Casino A;

b.    leasing the Aqua Building apartment unit in the name of a relative;

7

      c.      maintaining the Illinois vehicle title for the 1963 Chevrolet Corvette (VIN ending 3002) in the name of his relatives; and

      d.      handling his affairs in a manner so as to avoid the creation and maintenance of customary business and accounting records concerning actual revenues received and expenses incurred;

In violation of Title 26, United States Code, Section 7201.

## COUNT FOUR

The SPECIAL APRIL 2021 GRAND JURY further charges:

On or about April 18, 2017, in the Northern District of Illinois,

JOSEPH J. CIPOLLA, JR.,

defendant herein, a resident of the Northern District of Illinois, having received gross income in excess of the amount required to file an income tax return, and thereby being required by law to file an income tax return (Form 1040 with schedules and attachments) following the close of calendar year 2016 and on or before April 18, 2017, willfully failed to make and file such return at the time required by law;

In violation of Title 26, United States Code, Section 7203.

9

## COUNT FIVE

The SPECIAL APRIL 2021 GRAND JURY further charges:

1.     The allegations in sub-paragraphs 1(a), 1(b), 1(e) and 1(f) of Count One of this Superseding Indictment are re-alleged and incorporated herein.

2.     During 2017, on at least two occasions, CIPOLLA engaged in financial transactions greater than $10,000 at Casino A and thereby caused the generation of a currency transaction report ("CTR") by Casino A. The CTRs generated as a result of these transactions at Casino A reflected the social security number of Cipolla's relative in whose name the Casino A account was created.

3.     During 2017, CIPOLLA owned, operated and controlled a for-profit Illinois limited liability company called Mercedes Benz Classics LLC ("Mercedes Benz Classics"). Through Mercedes Benz Classics, CIPOLLA purchased and resold motor vehicles for a profit and earned substantial income in the process.

4.     During 2017, CIPOLLA defrauded at least three prospective purchasers of vehicles by taking their money for the sale of a vehicle without either delivering the vehicle or refunding the full amount of the purchase money received.

5.     During 2017, CIPOLLA purchased a BMW X5 vehicle ("the BMW") for a total price of approximately $90,398. Prior to purchasing the vehicle, CIPOLLA arranged for a relative to serve as the nominee owner of the vehicle, meaning that the BMW was legally titled in the name of the nominee owner even though CIPOLLA was the true owner of the BMW, possessed the BMW, and paid all of the costs

10

associated with BMW. As a down payment to complete the purchase, CIPOLLA provided $7,000 in cash and offered another car as a trade in. The remaining cost of the purchase was financed through the extension of a consumer loan by a lending institution. All paperwork associated with securing that financing, including the application, reflected that the purchase was being completed by CIPOLLA's relative when, in fact, CIPOLLA was the actual purchaser of the vehicle. At various times thereafter, CIPOLLA made installment payments pursuant to the loan agreement between the lending institution and the nominee purchaser. CIPOLLA also caused the BMW to be titled in Illinois in the name of the nominee purchaser.

6.    After consideration of the business and income-generating activity that CIPOLLA engaged in during 2017, including activity associated with Mercedes Benz Classics, CIPOLLA had an income tax due and owing to the Internal Revenue Service.

7.    CIPOLLA failed to file a Form 1040 individual income tax return for calendar year 2017 on or before April 17, 2018.

8.    During calendar year 2017, and continuing thereafter until the date of this Superseding Indictment, in the Northern District of Illinois, Eastern Division,

JOSEPH J. CIPOLLA, JR.,

defendant herein, did willfully attempt to evade and defeat the federal income tax due and owing by him to the United States for the calendar year 2017 by committing the following affirmative acts, among others:

11

a.    maintaining a false social security number at Casino A;

b.    causing the generation of CTRs that falsely indicated that one of CIPOLLA's relatives had engaged in financial transactions over $10,000 at Casino A;

c.    using a relative as a nominee purchaser of the BMW;

d.    using a nominee purchaser to secure financing for the purchase of the BMW;

e.    using a nominee titleholder for the BMW; and

f.    handling his affairs in a manner so as to avoid the creation and maintenance of customary business and accounting records concerning actual revenues received and expenses incurred;

In violation of Title 26, United States Code, Section 7201.

12

## COUNT SIX

The SPECIAL APRIL 2021 GRAND JURY further charges:

On or about April 17, 2018, in the Northern District of Illinois,

### JOSEPH J. CIPOLLA, JR.,

defendant herein, a resident of the Northern District of Illinois, having received gross income in excess of the amount required to file an income tax return, and thereby being required by law to file an income tax return (Form 1040 with schedules and attachments) following the close of calendar year 2017 and on or before April 17, 2018, willfully failed to make and file such return at the time required by law;

In violation of Title 26, United States Code, Section 7203.

13

## COUNT SEVEN

The SPECIAL APRIL 2021 GRAND JURY further charges:

1.     The allegations in sub-paragraphs 1(a), 1(b), 1(e) and 1(f) of Count One of this Superseding Indictment are re-alleged and incorporated herein.

2.     During 2018, CIPOLLA continued to own and operate Mercedes Benz Classics for the primary purpose of purchasing and selling motor vehicles for profit. CIPOLLA earned substantial income from his operation of Mercedes Benz Classics.

3.     During 2018, CIPOLLA owned, operated and controlled a for-profit Illinois limited liability company called Six North Aviation LLC ("Six North Aviation"). Through Six North Aviation, CIPOLLA purchased and resold motor vehicles for a profit and earned substantial income in the process.

4.     During 2018, CIPOLLA purchased a 1967 Pontiac GTO (VIN ending 9007) from Individual DM in Pennsylvania. During his purchase of that vehicle, CIPOLLA use a false name; in particular, CIPOLLA represented his name to be that of one of CIPOLLA's associates (Individual WC). CIPOLLA purchased the vehicle for approximately $41,000. After buying the vehicle, CIPOLLA did not apply to have the vehicle titled in CIPOLLA's name (or that of any entity he controlled). Also in 2018, CIPOLLA sold the vehicle to Individual WN for approximately $57,000. After selling the vehicle, CIPOLLA again intentionally refrained from being included in the vehicle's chain of title and merely provided the existing title to Individual WN. CIPOLLA engaged in this practice, which is known as "title-skipping," in order to

14

prevent his ownership of the vehicle appearing in government records. When asked by Individual WN why Individual DM's name was on the title, CIPOLLA falsely claimed that Individual DM was CIPOLLA's wife.

5.     During 2018, CIPOLLA continued to make payments toward the purchase of the BMW that was in the name of a nominee titleholder.

6.     After consideration of the business and income-generating activity that CIPOLLA engaged in during 2018, including activity associated with Mercedes Benz Classics and Six North Aviation, CIPOLLA had an income tax due and owing to the Internal Revenue Service.

7.     CIPOLLA failed to file a Form 1040 individual income tax return for calendar year 2018 on or before October 15, 2019.

8.     During calendar year 2018, and continuing thereafter until the date of this Superseding Indictment, in the Northern District of Illinois, Eastern Division,

JOSEPH J. CIPOLLA, JR.,

defendant herein, did willfully attempt to evade and defeat the federal income tax due and owing by him to the United States for the calendar year 2018 by committing the following affirmative acts, among others:

a.     maintaining a false social security number at Casino A;

b.     using a false name to purchase the 1967 Pontiac GTO (VIN ending 9007);

   c. engaging in title-skipping with respect to the sale of the 1967 Pontiac GTO (VIN ending 9007);

   d. maintaining a nominee titleholder for the BMW; and

   e. handling his affairs in a manner so as to avoid the creation and maintenance of customary business and accounting records concerning actual revenues received and expenses incurred;

 In violation of Title 26, United States Code, Section 7201.

## COUNT EIGHT

The SPECIAL APRIL 2021 GRAND JURY further charges:

On or about October 15, 2019, in the Northern District of Illinois,

JOSEPH J. CIPOLLA, JR.,

defendant herein, a resident of the Northern District of Illinois, having received gross income in excess of the amount required to file an income tax return, and thereby being required by law to file an income tax return (Form 1040 with schedules and attachments) following the close of calendar year 2018 and on or before October 15, 2019, willfully failed to make and file such return at the time required by law;

In violation of Title 26, United States Code, Section 7203.

## COUNT NINE

The SPECIAL APRIL 2021 GRAND JURY further charges:

1.      The allegations in sub-paragraphs 1(a) and 1(b) of Count One of this Superseding Indictment are re-alleged and incorporated herein.

2.      During 2019, CIPOLLA continued to own and operate Six North Aviation for the primary purpose of purchasing and selling motor vehicles for profit. In addition, CIPOLLA used Six North Aviation to purchase and sell aircraft. CIPOLLA earned substantial income from his operation of Six North Aviation.

3.      On or about February 27, 2019, CIPOLLA established a false registered agent for service of process for Six North Aviation with the Illinois Secretary of State.

4.      In or about August 2019, CIPOLLA rented aircraft hangar 99-2 at the DuPage County Airport through the use of a nominee lessee, namely, an associate of CIPOLLA (Individual AP).

5.      In or about October 2019, CIPOLLA rented aircraft hangar 99-1 at the DuPage County Airport through the use of a nominee lessee, namely, Individual AP.

6.      During 2019, CIPOLLA purchased a Cessna 210A aircraft. During his purchase of that aircraft, CIPOLLA used a false name; in particular, CIPOLLA represented his name to be "John Ryan." CIPOLLA purchased the aircraft for approximately $23,500. After buying the aircraft, CIPOLLA did not apply to have the aircraft titled in CIPOLLA's name or that of any entity he controlled. Thereafter, CIPOLLA sold that aircraft to Individual GS for approximately $40,000. After selling

the aircraft, CIPOLLA engaged in title skipping, namely, he intentionally refrained from being included in the aircraft's chain of title.

7.    During 2019, CIPOLLA continued to make payments toward the purchase of the BMW that was in the name of a nominee titleholder.

8.    After consideration of the business and income-generating activity that CIPOLLA engaged in during 2019, including activity associated with Six North Aviation, CIPOLLA had an income tax due and owing to the Internal Revenue Service.

9.    CIPOLLA failed to file a Form 1040 individual income tax return for calendar year 2019 on or before July 15, 2020.

10.    During calendar year 2019, and continuing thereafter until the date of this Superseding Indictment, in the Northern District of Illinois, Eastern Division,

JOSEPH J. CIPOLLA, JR.,

defendant herein, did willfully attempt to evade and defeat the federal income tax due and owing by him to the United States for the calendar year 2019 by committing the following affirmative acts, among others:

a.    establishing a false registered agent for service of process in Illinois for Six North Aviation;

b.    renting hangar 99-2 at the DuPage County Airport through a nominee lessee;

19

       c.      renting hangar 99-1 at the DuPage County Airport through a nominee lessee;

       d.      purchasing the Cessna 210A aircraft using a false name;

       e.      engaging in title-skipping with respect to the sale of the Cessna 210A aircraft;

       f.      maintaining a nominee titleholder for the BMW; and

       g.      handling his affairs in a manner so as to avoid the creation and maintenance of customary business and accounting records concerning actual revenues received and expenses incurred;

In violation of Title 26, United States Code, Section 7201.

## COUNT TEN

The SPECIAL APRIL 2021 GRAND JURY further charges:

On or about July 15, 2020, in the Northern District of Illinois,

### JOSEPH J. CIPOLLA, JR.,

defendant herein, a resident of the Northern District of Illinois, having received gross income in excess of the amount required to file an income tax return, and thereby being required by law to file an income tax return (Form 1040 with schedules and attachments) following the close of calendar year 2019 and on or before July 15, 2020, willfully failed to make and file such return at the time required by law;

In violation of Title 26, United States Code, Section 7203.

## COUNT ELEVEN

The SPECIAL APRIL 2021 GRAND JURY further charges:

1.     The allegations in sub-paragraphs 1(a) and 1(b) of Count One of this Superseding Indictment are re-alleged and incorporated herein.

2.     During 2020, CIPOLLA continued to own and operate Six North Aviation for the primary purpose of purchasing and selling motor vehicles and aircraft for profit. CIPOLLA earned substantial income from his operation of Six North Aviation.

3.     During 2020, CIPOLLA maintained a false registered agent for service of process for Six North Aviation with the Illinois Secretary of State.

4.     During 2020, CIPOLLA owned, operated and controlled a for-profit Illinois limited liability company called Dupage Aviation LLC ("Dupage Aviation"). Through Dupage Aviation, CIPOLLA offered, among other things, private jet leasing services to the public and earned substantial income in the process.

5.     During 2020, CIPOLLA fraudulently procured Paycheck Protection Program and Economic Injury Disaster Loans for various entities with which he was associated, including those described in Counts Thirteen through Nineteen herein.

6.     During 2020, CIPOLLA continued to rent DuPage County Airport hangars 99-1 and 99-2 through a nominee lessee.

7.     During 2020, CIPOLLA continued to make payments toward the purchase of the BMW that was in the name of a nominee titleholder.

22

8. After consideration of the business and income-generating activity that CIPOLLA engaged in during 2020, including activity associated with Six North Aviation and his procurement of Paycheck Protection Program and Economic Injury Disaster Loans, CIPOLLA had an income tax due and owing to the Internal Revenue Service.

9. CIPOLLA failed to file a Form 1040 individual income tax return for calendar year 2020 on or before May 17, 2021.

10. During calendar year 2020, and continuing thereafter until the date of this Superseding Indictment, in the Northern District of Illinois, Eastern Division,

JOSEPH J. CIPOLLA, JR.,

defendant herein, did willfully attempt to evade and defeat the federal income tax due and owing by him to the United States for the calendar year 2020 by committing the following affirmative acts, among others:

a. maintaining a false registered agent for service of process in Illinois for Six North Aviation;

b. renting hangar 99-2 at the DuPage County Airport through a nominee lessee;

c. renting hangar 99-1 at the DuPage County Airport through a nominee lessee;

d. maintaining a nominee titleholder for the BMW; and

23

e.     handling his affairs in a manner so as to avoid the creation and maintenance of customary business and accounting records concerning actual revenues received and expenses incurred;

In violation of Title 26, United States Code, Section 7201.

## **COUNT TWELVE**

The SPECIAL APRIL 2021 GRAND JURY further charges:

On or about May 17, 2021, in the Northern District of Illinois,

JOSEPH J. CIPOLLA, JR.,

defendant herein, a resident of the Northern District of Illinois, having received gross income in excess of the amount required to file an income tax return, and thereby being required by law to file an income tax return (Form 1040 with schedules and attachments) following the close of calendar year 2020 and on or before May 17, 2021, willfully failed to make and file such return at the time required by law;

In violation of Title 26, United States Code, Section 7203.

## COUNT THIRTEEN

The SPECIAL APRIL 2021 GRAND JURY further charges:

1.      At times material to this Superseding Indictment:

      a.      The U.S. Small Business Administration ("SBA") was a United States government agency that provided economic support to small businesses.

      b.      The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic.

      c.      One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses, including sole proprietorships, for job retention and certain other expenses, through a program called the Paycheck Protection Program ("PPP").

      d.      To obtain a PPP loan, an applicant submitted a PPP loan application. The PPP loan application required the applicant to acknowledge the program rules and make certain affirmative certifications regarding eligibility. Applicants were required to provide, among other things, the business's average monthly payroll expenses and number of employees. These figures were used to calculate the applicant's eligibility and the amount of money it could receive under the PPP. Applicants were also required to make good faith certifications, including

that economic uncertainties have necessitated their loan requests to support the ongoing operations of the applicant.

      e.    PPP loan proceeds were required to be used by the business for certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven by the SBA if the business spent the loan proceeds on these items within a designated period of time and used at least a certain percentage of the PPP loan for payroll expenses.

      f.    To gain access to funds through the PPP, applicants submitted applications to financial institutions participating in the PPP and received the loans directly from those financial institutions as the lender.

      g.    Participating financial institutions required applicants for PPP loans to provide truthful information about the business and its owner, including truthful information about the business's operating expenses, the business's employees, how the PPP loan would be used, and the applicant's criminal history, which information was material to lenders' approval, terms, and funding of loans.

      h.    During 2020, CIPOLLA owned, operated and controlled Six North Aviation.

      i.    During 2020, a CIPOLLA associate, Individual AP, was the nominal owner of Exotic Aerospace LLC ("Exotic Aerospace"), a for-profit Illinois limited liability company.

j.     During 2020, CIPOLLA owned, operated and controlled Chicago Exotic Car Collection LLC ("Chicago Exotic Car Collection"), which was a for-profit Illinois limited liability company.

k.     Bank A was a financial institution that issued PPP loans to qualified applicants. Bank A maintained computer servers that were located outside of Illinois.

l.     Company D was a financial technology company that processed PPP loan applications on behalf of financial institutions that issued PPP loans, including Bank B. Company D maintained computer servers that were located outside of Illinois.

m.     Company E was a financial technology company that issued PPP loans to qualified applicants.

2.     Beginning no earlier than on or about April 9, 2020, and continuing until at least June 2, 2020, at Itasca, in the Northern District of Illinois, Eastern Division, and elsewhere,

JOSEPH J. CIPOLLA, JR.,

defendant herein, knowingly devised, intended to devise, and participated in a scheme to defraud, and to obtain money and property from, Bank A, Company D, Bank B, and Company E, by means of materially false and fraudulent pretenses, representations, and promises, and the concealment of material facts, as further described below.

28

3. It was part of the scheme that CIPOLLA caused to be submitted to Bank A, Company D, Bank B and Company E, applications for PPP loans on behalf of multiple companies, including Six North Aviation, Exotic Aerospace and Chicago Exotic Car Collection, which applications contained materially false statements and misrepresentations concerning, among other things, each company's payroll and number of employees.

Bank A

4. It was further part of the scheme that, on or about April 9, 2020, CIPOLLA, on behalf of Six North Aviation, caused to be submitted to Bank A an application for a PPP loan from Bank A to Six North Aviation in the amount of approximately $450,000, based upon a claimed average payroll of $180,000 per month. As CIPOLLA knew at the time he submitted the application, Six North Aviation did not have a monthly payroll expense of $180,000.

5. It was further part of the scheme that, in support of Six North Aviation's application for a PPP loan from Bank A, CIPOLLA caused to be submitted to Bank A multiple documents that contained false information about Six North Aviation's and CIPOLLA's financial condition, including the following:

a. a document that purported to be a 2019 IRS Form 941 for Six North Aviation, which falsely reported that, during one quarter in 2019, Six North Aviation made wage payments of approximately $341,034.56 for 17 employees and withheld approximately $21,323.45 in federal income tax;

29

b.      a document that purported to be a "preview copy" of a 2019 IRS Form 1040 individual income tax return for CIPOLLA, which falsely claimed (on Schedule C) that Six North Aviation paid wages of approximately $1,249,999 in 2019; and

c.      documents purporting to be employee profiles for 18 purported Six North Aviation employees, most of which contained a false social security number and/or false addresses for the purported employees.

6.      It was further part of the scheme that, through the submission of the false and fraudulent PPP loan application, CIPOLLA caused Bank A to disburse a PPP loan to Six North Aviation of approximately $284,195, on or about May 1, 2020, into a bank account (ending in 7980) that Six North Aviation maintained at JPMorgan Chase Bank ("Chase Bank"). CIPOLLA knew at the time that neither he nor Six North Aviation was entitled to the PPP loan funds.

<u>Company D / Bank B</u>

7.      It was further part of the scheme that, on or about May 1, 2020, CIPOLLA caused to be submitted to Company D an application for a PPP loan from Bank B to Exotic Aerospace in the amount of approximately $305,000, in which he falsely and fraudulently represented that Exotic Aerospace had 17 employees and an average payroll of $122,000 per month. As CIPOLLA knew at the time he caused the submission of the application, Exotic Aerospace did not have 17 employees or a monthly payroll of $122,000.

8.     It was further part of the scheme that, in support of Exotic Aerospace's application for a PPP loan from Bank B, CIPOLLA caused to be submitted to Company D and Bank B a document that purported to be a 2019 IRS Form 941 for Exotic Aerospace, which falsely reported that, during the fourth quarter of 2019, Exotic Aerospace made wage payments of approximately $407,923.23 for 17 employees and withheld approximately $57,878 in federal income tax.

9.     It was further part of the scheme that, through the submission of the false and fraudulent PPP loan application, CIPOLLA caused Bank B to disburse a PPP loan of approximately $305,000, on or about May 4, 2020, into a bank account (ending in 5280) that Exotic Aerospace maintained at Chase Bank. CIPOLLA knew at the time that neither he, Individual AP, nor Exotic Aerospace was entitled to the PPP loan funds.

<u>Company E</u>

10.     It was further part of the scheme that, on or about May 30, 2020, CIPOLLA, on behalf of Chicago Exotic Car Collection, caused to be submitted to Company E an application for a PPP loan from Company E to Chicago Exotic Car Collection in the amount of approximately $445,403, based upon a claimed average payroll of $178,162 per month for 24 employees. As CIPOLLA knew at the time he submitted the application, Chicago Exotic Car Collection had neither a monthly payroll expense of $178,162 nor 24 employees.

11.     It was further part of the scheme that, in support of Chicago Exotic Car Collection's application for a PPP loan from Company E, CIPOLLA caused to be submitted to Company E a document that purported to be a 2019 IRS Form W-3SS, which falsely reported approximately $534,484 in paid wages and approximately $72,347 in withheld income taxes, as well as a false indication that Chicago Exotic Car Collection had issued 21 IRS Form W-2 statements in 2019.

12.     It was further part of the scheme that, through the submission of the false and fraudulent PPP loan application, CIPOLLA caused Company E to disburse a PPP loan to Chicago Exotic Car Collection of approximately $445,403, on or about June 2, 2020, into a bank account (ending in 5641) that CIPOLLA maintained as a personal account at Chase Bank. CIPOLLA knew at the time that neither he nor Chicago Exotic Car Collection was entitled to the PPP loan funds.

Concealment

13.     It was further part of the scheme that CIPOLLA concealed, misrepresented and hid, and caused to be concealed, misrepresented and hidden, the existence and purpose of the scheme and the acts done in furtherance of the scheme.

14.     On or about April 9, 2020, at Itasca, in the Northern District of Illinois, Eastern Division, and elsewhere,

JOSEPH J. CIPOLLA, JR.,

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communications in interstate commerce certain

32

writings, signs, and signals, namely, an application for a PPP loan from Bank A to Six North Aviation, which was processed outside of the State of Illinois;

In violation of Title 18, United States Code, Section 1343.

## COUNT FOURTEEN

The SPECIAL APRIL 2021 GRAND JURY further charges:

1.     The allegations in paragraphs 1 through 13 of Count Thirteen of this Superseding Indictment are re-alleged and incorporated herein.

2.     On or about May 1, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

JOSEPH J. CIPOLLA, JR.,

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communications in interstate commerce certain writings, signs, and signals, namely, an electronic wire transmission of approximately $284,195, which was processed through Chase Bank servers located outside of Illinois and credited to Six North Aviation's Chase Bank account (ending in 7980);

In violation of Title 18, United States Code, Section 1343.

34

## COUNT FIFTEEN

The SPECIAL APRIL 2021 GRAND JURY further charges:

1.     The allegations in paragraphs 1 through 13 of Count Thirteen of this Superseding Indictment are re-alleged and incorporated herein.

2.     On or about May 1, 2020, at Itasca, in the Northern District of Illinois, Eastern Division, and elsewhere,

JOSEPH J. CIPOLLA, JR.,

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communications in interstate commerce certain writings, signs, and signals, namely, an application transmitted to Company D for a PPP loan from Bank B to Exotic Aerospace, which was processed outside of the State of Illinois;

In violation of Title 18, United States Code, Section 1343.

## COUNT SIXTEEN

The SPECIAL APRIL 2021 GRAND JURY further charges:

1.     The allegations in paragraphs 1 through 13 of Count Thirteen of this Superseding Indictment are re-alleged and incorporated herein.

2.     On or about May 4, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

JOSEPH J. CIPOLLA, JR.,

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communications in interstate commerce certain writings, signs, and signals, namely, an electronic wire transmission of approximately $305,000 from Bank B which was processed on servers located outside of Illinois and credited to Exotic Aerospace's Chase Bank account (ending in 5280);

In violation of Title 18, United States Code, Section 1343.

36

## COUNT SEVENTEEN

The SPECIAL APRIL 2021 GRAND JURY further charges:

1.     The allegations in paragraphs 1 through 13 of Count Thirteen of this Superseding Indictment are re-alleged and incorporated herein.

2.     On or about May 30, 2020, at Itasca, in the Northern District of Illinois, Eastern Division, and elsewhere,

JOSEPH J. CIPOLLA, JR.,

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communications in interstate commerce certain writings, signs, and signals, namely, an application transmitted to Company E for a PPP loan from Company E to Chicago Exotic Car Collection, which was processed outside of the State of Illinois;

In violation of Title 18, United States Code, Section 1343.

## COUNT EIGHTEEN

The SPECIAL APRIL 2021 GRAND JURY further charges:

1.      The allegations in paragraphs 1 through 13 of Count Thirteen of this Superseding Indictment are re-alleged and incorporated herein.

2.      On or about June 2, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

JOSEPH J. CIPOLLA, JR.,

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communications in interstate commerce certain writings, signs, and signals, namely, an electronic wire transmission of approximately $445,403 from Company E which was processed on servers located outside of Illinois and credited to CIPOLLA's Chase Bank account (ending in 5641);

In violation of Title 18, United States Code, Section 1343.

## COUNT NINETEEN

The SPECIAL APRIL 2021 GRAND JURY further charges:

1.     The allegations in sub-paragraphs 1(a) and 1(b) of Count Thirteen of this Superseding Indictment are re-alleged and incorporated herein.

2.     At times material to this Superseding Indictment:

a.     One source of relief provided by the CARES Act and other pandemic-relief legislation was the expansion of the Economic Injury Disaster Loan ("EIDL") Program, which provided loan assistance (including advances of up to $10,000) for businesses with 500 or fewer employees and other eligible entities. The EIDL Program was designed to provide economic relief to small businesses that were experiencing a temporary loss of revenue.

b.     To gain access to funds through the EIDL Program, small businesses applied through the SBA via an online portal and application. As part of the EIDL application process, the SBA required applicants to submit truthful information about the applying entity and its condition prior to the COVID-19 pandemic. This information included the entity's gross revenues and cost of goods sold for the 12-month period prior to January 31, 2020, and the entity's number of employees as of January 31, 2020. The applicant also was required to provide the business owner's name, date of birth, and social security number. Applicants were required to electronically certify that the information provided in the application was

39

true and correct and were warned that any false statement or misrepresentation to the SBA may result in sanctions, including criminal penalties.

      c.     EIDL funds were issued to the small business applicants directly from the United States Treasury.

      d.     EIDL Advance was a grant program offered together with the EIDL program. EIDL Advance was designed to provide emergency economic relief to businesses that were experiencing a temporary loss of revenue as a result of the COVID-19 pandemic. The applicant could request consideration for an EIDL advance in an application for an EIDL loan. The amount of the advance issued to the small business applicant was determined by the number of employees indicated on the EIDL application, $1,000 per employee, up to $10,000. If an EIDL advance was issued, the advance did not need to be repaid.

      e.     At times, the SBA requested additional materials in support of an EIDL application to confirm the identity of the business owner and the authenticity of the applying entity, including a copy of the business owner's state-issued identification card and documentation substantiating the existence of the applying entity.

      f.     The SBA used the business owner's personal identifying information from the EIDL application, including the owner's name and social security number, to generate a credit report for the owner. The creditworthiness of the business owner was material to the SBA's decision to approve an EIDL loan.

g. If the application was approved by the SBA, the amount of the EIDL loan was determined in part based on the statements in the EIDL application about the entity's revenues and cost of goods sold for the 12 months prior to January 31, 2020.

h. EIDL Program funds could be used to pay for the ordinary operating expenses and debts of the entity, including payroll, sick leave, production costs, utilities, rent, and mortgage payments.

i. During 2020, CIPOLLA owned, operated and controlled Six North Aviation.

3. Beginning no later than April 3, 2020, and continuing until at least June 26, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

JOSEPH J. CIPOLLA, JR.,

defendant herein, knowingly devised, intended to devise, and participated in a scheme to defraud, and to obtain money and property from the EIDL Program by means of materially false and fraudulent pretenses, representations, and promises, as further described below.

4. It was part of the scheme that, on or about April 3, 2020, CIPOLLA caused to be submitted to the SBA an application for an EIDL loan on behalf of Six North Aviation, which applications contained materially false statements and misrepresentations concerning, among other things, the company's gross revenue, cost of goods sold, and number of employees.

41

5. It was further part of the scheme that, in the EIDL loan application, CIPOLLA falsely represented that, in the 12 months prior to January 31, 2020, Six North Aviation had $3,000,000 in gross revenues and $2,700,000 in cost of goods sold, and that, as of January 31, 2020, the company had four employees. CIPOLLA knew at the time that Six North Aviation did not have the revenue, cost of goods sold, or number of employees claimed in the application.

6. It was further part of the scheme that, through the submission of the false and fraudulent EIDL loan application, CIPOLLA caused the SBA to disburse at least approximately $149,900 in EIDL loans and advances into a bank account (ending in 7980) that Six North Aviation maintained at Chase Bank. CIPOLLA knew at the time that neither he nor Six North Aviation was entitled to the EIDL funds.

7. It was further part of the scheme that CIPOLLA misrepresented, concealed, and hid, and caused to be misrepresented, concealed, and hidden, certain material facts, including the acts and purposes of the acts done in furtherance of the scheme.

8. On or about June 12, 2020, at Itasca, in the Northern District of Illinois, Eastern Division, and elsewhere,

JOSEPH J. CIPOLLA, JR.,

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, signals, and sounds, namely, an interstate wire transmission of

approximately $145,900 from the Federal Reserve Bank to Six North Aviation's Chase Bank account (ending in 7980), which funds represented the proceeds of an EIDL to Six North Aviation;

In violation of Title 18, United States Code, Section 1343.

## COUNT TWENTY

The SPECIAL JULY 2021 GRAND JURY further charges:

1.  At times material to this Superseding Indictment:

    a.  Bank C was a financial institution, namely, a credit union the accounts of which were insured by the National Credit Union Share Insurance Fund.

    b.  Bank C offered loans for the purchase of automobiles.

    c.  Bank C required applicants for automobile loans to provide truthful information, including truthful information about the applicant's employment and income, which information was material to Bank C's approval, terms, and funding of loans.

    d.  In March 2020, CIPOLLA lived at a residence in Itasca, Illinois ("the Itasca Residence").

2.  In or about March 2020, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

                        JOSEPH J. CIPOLLA, JR.,

defendant herein, knowingly participated in a scheme to defraud Bank C and to obtain money and funds owned by and under the custody and control of Bank C by means of materially false and fraudulent pretenses, representations, and promises, which scheme is further described below.

3.  It was part of the scheme that CIPOLLA fraudulently obtained an automobile loan from Bank C by submitting, and causing to be submitted, a loan

44

application in which CIPOLLA made false statements relevant to his creditworthiness, including false representations regarding his employment and assets.

4. It was further part of the scheme that, on or about March 13, 2020, in order to purchase a 2010 Ferrari 458 Italia (VIN ending 5302) from Company F, an automobile dealership located in Downers Grove, Illinois, CIPOLLA submitted an application for financing to Bank C.

5. It was further part of the scheme that, in order to obtain financing, CIPOLLA falsely represented in the loan application to Bank C that:

a. CIPOLLA had lived at the Itasca Residence for more than seven years when, in fact, CIPOLLA only began living at the Itasca Residence in or about March 2017;

b. CIPOLLA owned the Itasca Residence when, in fact, CIPOLLA was renting the Itasca Residence; and

c. CIPOLLA had served as the President of Six North Aviation for 5 years and 9 months, when, in fact, Six North Aviation only came into existence in or about March 2018.

6. It was further part of the scheme that CIPOLLA certified the factual statements in the loan application as being complete and true when, as CIPOLLA knew at the time, the loan application included false statements of material fact related to CIPOLLA's employment and assets.

45

7. It was further part of the scheme that, in support of his application, CIPOLLA submitted to Bank C what purported to be IRS Form 1040 individual income tax returns for CIPOLLA for tax years 2017 and 2018 that were filed with the IRS when, as CIPOLLA knew, he had not filed any individual income tax returns for tax years 2017 and 2018.

8. It was further part of the scheme that, as a result of his false statements in the loan application and provision of false tax returns, CIPOLLA induced Bank C to extend a loan to CIPOLLA in the amount of approximately $125,982 for the purchase of a 2010 Ferrari 458 Italia (VIN ending 5302).

9. It was further part of the scheme that CIPOLLA concealed, misrepresented and hid, and caused to be concealed, misrepresented and hidden, the existence and purpose of the scheme and the acts done in furtherance of the scheme.

10. On or about March 31, 2020, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

JOSEPH J. CIPOLLA, JR.,

defendant herein, knowingly executed and attempted to execute the scheme to defraud by causing Bank C, a financial institution, to fund an automobile loan in the amount of approximately $125,982 for CIPOLLA's purchase of a 2010 Ferrari 458 Italia (VIN ending 5302);

In violation of Title 18, United States Code, Section 1344.

46

### COUNT TWENTY-ONE

The SPECIAL APRIL 2021 GRAND JURY further charges:

1. At times material to this Superseding Indictment:

a. CIPOLLA owned, operated and controlled Chicago Muscle Cars, Mercedes Benz Classics and Six North Aviation, among other companies.

b. Through some of his companies, including Chicago Muscle Cars, Mercedes Benz Classics and Six North Aviation, CIPOLLA purchased and resold motor vehicles for a profit.

c. Through Six North Aviation, CIPOLLA purchased and resold aircraft for a profit.

2. Beginning no earlier than in or about 2016, and continuing until at least in or about 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

JOSEPH J. CIPOLLA, JR.,

defendant herein, knowingly devised, intended to devise, and participated in a scheme to defraud, and to obtain money and property from Individual BM, Company G, and other individuals and entities, by means of materially false and fraudulent pretenses, representations, and promises, and the concealment of material facts, as further described below.

3. It was part of the scheme that CIPOLLA, individually or through companies associated with him, offered vehicles, aircraft and other equipment for sale on various internet sites, including eBay, Craigslist and Trade-A-Plane.

47

4.     It was further part of the scheme that, on various occasions, CIPOLLA made false statements to prospective purchases about the condition of vehicles and aircraft that he offered for sale on the internet sites.

5.     It was further part of the scheme that, on various occasions, CIPOLLA induced prospective purchasers to pay for a vehicle, aircraft or other items that CIPOLLA thereafter did not deliver.

6.     It was further part of the scheme that, on various occasions, CIPOLLA, after accepting purchase money for a vehicle or aircraft, refused to return all or a portion of the purchase money despite his failure to provide the purchaser with the vehicle or aircraft.

7.     It was further part of the scheme that, on various occasions, CIPOLLA rolled back the mileage on vehicle odometers in order to increase the ostensible value of the vehicle and thereafter falsely represented the rolled back mileage as the true mileage on the vehicle.

<u>Individual BM</u>

8.     It was further part of the scheme that, in or about April 2017, CIPOLLA, through Mercedes Benz Classics advertised for sale a 1987 Mercedes Benz 560 SL (VIN ending 1470) for sale on eBay.

9.     It was further part of the scheme that, in or about April 2017, CIPOLLA agreed to sell the vehicle to Individual BM and, as a result, induced

Individual BM to pay Mercedes Benz Classics approximately $16,000 to conclude the purchase.

10.    It was further part of the scheme that, after receiving the purchase money from Individual BM, CIPOLLA neither provided Individual BM with the vehicle nor refunded the purchase money to Individual BM.

<u>Company G</u>

11.    It was further part of the scheme that, in or about May or June 2019, CIPOLLA purchased a 1986 Buick Regal Grand National (VIN ending 1876) from an individual in Michigan and caused the vehicle to be titled in Illinois under Six North Aviation.

12.    It was further part of the scheme that, with intent to fraudulently increase the vehicle's value, CIPOLLA rolled back the vehicle's odometer from an approximate high mileage of 55,728 to an approximate low mileage of 4,800.

13.    It was further part of the scheme that, in or about June 2019, CIPOLLA, through Six North Aviation, advertised the vehicle for sale on eBay.

14.    It was further part of the scheme that, in or about June 2019, on eBay and in verbal conversations with a representative of Company G, CIPOLLA misrepresented the true condition of the vehicle, including by falsely asserting that the vehicle's mileage was only approximately 4,800.

15.    It was further part of the scheme that, as a result of his false representations concerning the 1986 Buick Regal Grand National (VIN ending 1876),

CIPOLLA induced Company G, on or about June 18, 2019, to pay Six North Aviation $27,500 for the vehicle.

16.     It was further part of the scheme that, on or about June 28, 2019, CIPOLLA mailed the Illinois title to the vehicle to Company G.

## Concealment

17.     It was further part of the scheme that CIPOLLA concealed, misrepresented and hid, and caused to be concealed, misrepresented and hidden, the existence and purpose of the scheme and the acts done in furtherance of the scheme.

18.     On or about June 18, 2019, at Itasca, in the Northern District of Illinois, Eastern Division, and elsewhere,

### JOSEPH J. CIPOLLA, JR.,

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communications in interstate commerce certain writings, signs, and signals, namely, an electronic wire transfer from Company G of approximately $27,500, which was initiated outside of the State of Illinois and credited to Six North Aviation's Chase Bank account (ending in 7980);

In violation of Title 18, United States Code, Section 1343.

## COUNT TWENTY-TWO

The SPECIAL APRIL 2021 GRAND JURY further charges:

1.     The allegations in paragraphs 1 through 17 of Count Twenty-One of this Superseding Indictment are re-alleged and incorporated herein.

2.     On or about June 28, 2019, in the Northern District of Illinois, Eastern Division, and elsewhere,

JOSEPH J. CIPOLLA, JR.,

defendant herein, for the purpose of executing the scheme, and attempting to do so, knowingly placed and caused to be placed in an authorized depository for mail an item to be delivered by the United States Postal Service, namely, an Illinois Certificate of Title of a Vehicle for the 1986 Buick Regal Grand National (VIN ending 1876) addressed to Company G in North Royalton, Ohio;

In violation of Title 18, United States Code, Section and 1341.

51

## COUNT TWENTY-THREE

The SPECIAL JULY 2021 GRAND JURY further charges:

In or about June 2019, in the Northern District of Illinois, Eastern Division, and elsewhere,

JOSEPH J. CIPOLLA, JR.,

defendant herein, knowingly and willfully replaced, reset, and altered, and cause to be replaced, reset, and altered, the odometer of a motor vehicle, namely, a 1986 Buick Regal Grand National (VIN ending 1876), with the intent to change the number of miles indicated on the odometer from an approximate high mileage of 55,728 to an approximate false mileage of 4,896;

In violation of Title 49, United States Code, Sections 32703(2) and 32709(b).

## COUNT TWENTY-FOUR

The SPECIAL APRIL 2021 GRAND JURY further charges:

1.     At times material to this Superseding Indictment:

      a.     CIPOLLA owned, operated and controlled Six North Aviation, Chicago Exotic Car Collection and Dupage Aviation.

      b.     At various times, CIPOLLA had access to private jet aircraft, to include the following:

      i.     a Dassault-Breguet Falcon 50 aircraft bearing Federal Aviation Administration ("FAA") Registration Number N569BW ("the Falcon 50 Aircraft"), which was leased by Chicago Exotic Car Collection from its owner during the period of approximately June 16, 2020, through and including December 2, 2020; and

      ii.     a British Aerospace BAE 125 Series 800A Hawker aircraft bearing FAA Registration Number N117JT ("the Hawker 800 Aircraft"), which was owned by Dupage Aviation as of approximately August 24, 2020.

      c.     CIPOLLA maintained the Falcon 50 Aircraft and the Hawker 800 Aircraft at various places, including at the DuPage Airport in West Chicago, Illinois.

      d.     CIPOLLA advertised on an internet website for Dupage Aviation that consumers could dry lease aircraft, including the Falcon 50 Aircraft and the Hawker 800 Aircraft, from Dupage Aviation, meaning that consumers could rent the aircraft without the provision of a pilot or crew, with additional expenses to be borne

by the lessee of the aircraft. In the website posting, CIPOLLA falsely represented that Dupage Aviation owned the Falcon 50 Aircraft.

2. Beginning no earlier than on or about October 6, 2020, and continuing until at least May 9, 2021, at DuPage County, in the Northern District of Illinois, Eastern Division, and elsewhere,

JOSEPH J. CIPOLLA, JR.,

defendant herein, knowingly devised, intended to devise, and participated in a scheme to defraud, and to obtain money and property from Individual JM and Company H, by means of materially false and fraudulent pretenses, representations, and promises, and the concealment of material facts, as further described below.

3. It was part of the scheme that CIPOLLA, through the use of false representations and promises, including the false claim that the Falcon 50 Aircraft and the Hawker 800 Aircraft were insured, induced Individual JM, and Company H to enter into contracts with Chicago Exotic Car Collection and Dupage Aviation for the provision of dry leasing services.

4. It was further part of the scheme that CIPOLLA utilized a form dry leasing contract for customers dry leasing an aircraft from Chicago Exotic Car Collection and Dupage Aviation.

Individual JM

5. It was further part of the scheme that, on or about October 6, 2020, CIPOLLA, acting on behalf of Dupage Aviation, the lessor, entered into a non-

exclusive dry lease contract with Individual JM, the lessee, for a number of flight hours on the Hawker 800 Aircraft.

6.     It was further part of the scheme that the dry lease contract between Dupage Aviation and Individual JM falsely claimed that: (a) the lessor maintained an insurance policy with the "N. Brown Agency" in the amount of $1,000,000 that would insure the lessee's contractual liability to the lessor, including as a result of damage or loss of the aircraft as a result of the lessee's operation of the leased aircraft; and (b) that the lessor would provide the lessee with a copy of the Certificate of Insurance upon demand. In fact, CIPOLLA did not maintain an insurance policy on the aircraft. The existence of the claimed insurance policy was a material factor in the lessee's decision to lease the aircraft.

7.     It was further part of the scheme that CIPOLLA represented to Individual JM that Individual JM could, at his election, use the leased flight hours interchangeably between the Falcon 50 Aircraft and the Hawker 800 Aircraft.

8.     It was further part of the scheme that, as a result of CIPOLLA's false representations, Individual JM paid $30,000 to Dupage Aviation to dry lease the Hawker 800 Aircraft and/or the Falcon 50 Aircraft. At CIPOLLA's direction, the funds were wired into a Six North Aviation bank account.

9.     It was further part of the scheme that, in or about January 2021, CIPOLLA falsely represented to Individual JM that the Falcon 50 Aircraft was unavailable due to repairs when, as CIPOLLA knew, it was unavailable to CIPOLLA

because the owner of the Falcon 50 Aircraft had repossessed it from Dupage Aviation on or about December 2, 2020.

### Company H

10.     It was further part of the scheme that, on or about April 25, 2021, CIPOLLA, acting on behalf of Dupage Aviation, the lessor, entered into a non-exclusive dry lease contract with Company H, for a number of flight hours on the Hawker 800 Aircraft.

11.     It was further part of the scheme that the dry lease contract between Dupage Aviation and Company H falsely claimed that: (a) the lessor maintained an insurance policy with the "N. Brown Agency" in the amount of $1,000,000 that would insure the lessee's contractual liability to the lessor, including as a result of damage or loss of the aircraft as a result of the lessee's operation of the leased aircraft; and (b) that the lessor would provide the lessee with a copy of the Certificate of Insurance upon demand. The dry lease contract further stated that this insurance policy included a $50,000,000 per incident aggregate policy that named Company H as an additional insured. In fact, CIPOLLA did not maintain an insurance policy on the aircraft. The existence of the claimed insurance policy was a material factor in the lessee's decision to lease the aircraft.

12.     It was further part of the scheme that, during the course of negotiating the lease and well into the lease period, CIPOLLA falsely represented to an official of Company H that his name was "Joe Cunningham."

13.     It was further part of the scheme that, as a result of CIPOLLA's false representations, Company H paid $90,000 to Dupage Aviation to dry lease the Hawker 800 Aircraft via a wire transfer into a personal bank account held by CIPOLLA.

Concealment

14.     It was further part of the scheme that CIPOLLA concealed, misrepresented and hid, and caused to be concealed, misrepresented and hidden, the existence and purpose of the scheme and the acts done in furtherance of the scheme.

15.     On or about April 24, 2021, in the Northern District of Illinois, Eastern Division, and elsewhere,

JOSEPH J. CIPOLLA, JR.,

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communications in interstate commerce certain writings, signs, and signals, namely, a wire transfer of approximately $90,000 from Company H to a bank account (ending in 7682) that CIPOLLA maintained at First Midwest Bank in the Northern District of Illinois, which wire transfer originated outside the State of Illinois;

In violation of Title 18, United States Code, Section 1343.

57

## FORFEITURE ALLEGATION

The SPECIAL APRIL 2021 GRAND JURY further alleges:

1.     Upon conviction for an offense in violation of Title 18, United States Code, Section 1343, as set forth in Counts Thirteen through Nineteen, Count Twenty-One and Count Twenty Four of this Superseding Indictment, and upon conviction for an offense in violation of Title 18, United States Code, Section 1341, as set forth in Count Twenty-Two, defendant shall forfeit to the United States of America any property which constitutes and is derived from proceeds traceable to the offense, as provided in Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

2.     The property to be forfeited includes, but is not limited to, an amount of money forfeitable through a personal money judgment in the amount of at least approximately $1,728,610.

3.     If any of the property described above, as a result of any act or omission by defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, as provided in Title 21, United States Code Section 853(p).

58

A TRUE BILL:

_____

FOREPERSON

_____
UNITED STATES ATTORNEY